The next case on the calendar, Rose v. City of Utica. Please proceed. Your Honor, this case is replete with proof failures and questions of fact as to what occurred in the incidents. Starting right at the core of the issue, Mr. Ellis came in and claimed that he was shot at. By Jesse, but there was only one shot, and the shot was in my client's abdomen. And there was no corroborating evidence of a shell or wadding. And all the eyewitnesses said he wasn't shot at. Harold, before you focus on the disputed facts, and I agree with you, there are disputed facts, I just want to go through with you a couple of facts and you tell me whether these were undisputed, okay? Please do. All right. Officer Ellis received a dispatch call that shots had been fired in the park. He was responding to that, true or untrue? Absolutely true, Your Honor. Undisputed. Undisputed that he was in his car and the dispatcher called him and that my client shot four shots in the park, two of them at trees and two at the ground. You added something there. The officer wasn't told he was just told shots fired. He wasn't told shot in the air, shot to the ground, right? That is what the record shows. We don't have the actual dispatch call. He also wasn't told that your client had any emotional disturbance or was suicidal. That was not told to him in the call either, right? He was – well, nobody would really know that at that point in time. I'm just – I understand that. Right. But officer gets a call, shots in the park, right? And he responds to it and talks to the witness. Responds. Finds your client with the gun. And my next question to you, is it undisputed that he asked your client – or directed your client to drop the gun? Disputed or undisputed? There's a lot of question about what he said or what he didn't say, Your Honor. There are aspects of what he said. But in the end, I would go along with the fact that he raced into the park shouting commands with a drawn gun in the first two or three seconds of this incident. And that would probably have included a command to drop the gun. And then the last fact was instead of dropping the gun, your client turned – Mr. Rose turned towards him with the gun in his hand. Undisputed or not? My client – Forget about the location of the gun. I know there's a dispute about the positioning of the gun. But the core fact that's undisputed, I believe, is that he had the gun in his hand when he turned to the officer. My client was seated on the side with the gun in this position, as we understand it from the eyewitnesses. And then he stood – well, like this. And then he stood and turned like this. At that point in time, he would have seen the cop. About that time, the cop shot the jungle gym. And at that point in time, he would have been removing the gun like this, and the strap would have been here. You're adding other facts, but there's no dispute that when he turned to the officer, he had the gun in his hand? Absolutely, Your Honor. So what case, what case anywhere in the United States, federal case, has a court found no qualified immunity where an officer has those undisputed facts before him or her to use deadly force? Which case would say that that's not enough for you to invoke deadly force? The answer is, Your Honor, that I do not – I have not got a case exactly on that point. Doesn't that, unfortunately from your perspective, create a real problem? Because you have to be able to show that there is a clearly – there's a case that clearly establishes the proposition that you're arguing for, and you've just said that there isn't. And under the case, for example, of Sheehan, the Supreme Court's decision in 2015, opinion by Justice Alito, an officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable officer in his shoes would have understood that he was violating it. Yes, but in Sheehan, they had a mental patient with a knife that was standing there threatening people. My client did nothing but follow the police officer's orders, who told him to stand up and drop the gun, and that's what he was in the process of doing when he got shot dead. How does the officer know he's in the process of dropping the gun when he turns with the gun in his hands? How does the officer know whether he's going to drop the gun or shoot it? The answer is that it wasn't pointed at him. It was pointed at my client. According to the eyewitnesses, it was pointed at – my client had it pointed at himself. He has to wait until the gun's pointed at him so that he can be killed before he can protect himself? No, Your Honor. Your Honor, I think he would have done much better to avoid this whole situation and use a megaphone back at the police car. Sure. You know, in the coolness of time, that's all well and good, but the standard that we have to look at is that there has to be a case on point, and you've already told my colleague, Judge Bianco, that there is none on point. And how do you survive that after having further had the very difficult language read to you by the presider? He turned. He stood and turned, and he was holding the gun, but he didn't know it was a police officer coming up on him. And from the officer's perception, I think that it would – Well, he'd been discharging a gun in a public place. The officer had the gun drawn before he even identified the assailant. He was racing in, you know, without thinking or any sense of it. Those may be interesting points, but they're not directed at the question I just asked you. Tell me why. Tell me how you escaped the very confining language of Justice Alito and the Supreme Court. I escaped it, Your Honor, on the credibility of the police officer that he was not shot at. I escaped it on the fact there was no mistake as to barrel direction or anything like that. You're saying that there's – And I escaped it on – Excuse me. Yes, sir, Your Honor. Generally what happens, counsel, is that if I start to speak, you wait for a second so that I can ask you a question. Yes, sir, Your Honor. Go ahead. So what's the name of your case that says he has to wait to be shot at? I have no case that says he has to wait to be shot at. That's not my case. It's somebody else's case, a defense made up. Let me do – I need to do a little housekeeping with you before your light turns red. At pages 12 through 17 of your brief, you're in violation of the rules of this court. You cut and pasted head notes from some other cases for various principles with regard to the use of excessive force. It detracts extraordinarily from your argument and reflects upon you individually as an attorney. Please don't ever do it again because I've instructed the clerk that even if there's a partial noncompliance with the rules of court, your brief will be rejected. Pages 12 through 17, the argument, unless there is an imminent threat of harm to the officers of third parties, Officer Ellis cannot use deadly force, the constitutional standard. Now, I understand that that's all background information, but when you cut and pasted even to the point of where the head notes appear, you cut and pasted it and put it in a brief to this court. Please don't do that ever again. Whoever you want it done, Your Honor, is how it's going to be done. Thank you very much. Thank you, Your Honor. Thank you. May it please the Court. My name is Zachary Warner and I represent the Defendant Appellees, City of Utica, and Officer Anthony Ellis in this matter. The question before the Court is whether there was clearly established law that an officer could not use deadly force when he was confronted with a mobile active shooter in a public park, and when he identifies the location of the active shooter, the active shooter does not respond to that officer's commands to drop the firearm that the active shooter was holding. I have found no case on point saying that this is law, and I believe my adversary has just admitted that. At that point, Officer Ellis is entitled to qualified immunity, and as Your Honor astutely observed, there is no clearly established law essentially saying that an active shooter gets to get the first shot off. Now, we've been discussing Supreme Court case law, and I will say it's not just the Sheehan case why Defendant Officer Ellis is entitled to qualified immunity. In fact, since 2014, the Supreme Court has heard five deadly force cases, and in every one that they've heard, they've granted qualified immunity to the defendant police officer. So I submit, Your Honors, they're sending us a clear message which these cases are not to be taken lightly, and that officers are to be given wide discretion when dealing with these split-second decisions, which this was. For example, if we look at the record, the recording, Dr. Begalt's analysis of the relevant portion from when Officer Ellis enters the park to the shots being the exchange of gunfire, it's roughly six seconds long. A firearm can be fired within roughly 21 hundredths of a second. That's the times, the minuscule, literally split-second decisions this officer had to make, which the Supreme Court has repeatedly said is protected by qualified immunity. Moreover, this is a possibly tragic, it is a tragic case, isn't it? I mean, in the sense that it appears that the bullet went into his abdomen, right? So he was shooting at himself. Yes, Your Honor. It is a tragic case. Which goes to a different point than what the law requires in this case, but this is a case where an officer is put in a very difficult position. Shots have been fired. He rushes into a situation, and the law gives him some leeway and some deference as to what he might do. But this is, in terms of the real world, this is also, on the other side of it, a tragic situation of somebody who's mentally ill, obviously was capable of shooting up people in that public park. But with respect to this incident, the bullet goes into his own abdomen, which suggests that it was not aimed at the officer. Correct, Your Honor. And I will say that you've got almost two questions. One is the issue of Officer Ellis's tactics, and is he entitled to qualified immunity for that. And the other issue was his perception of where the firearm was pointing at the time that he shot. Was that a reasonable, mistaken perception? So let me address the tactics issue first. The best case, which Your Honor cited, is the Sheehan case. That's a 2015 Supreme Court case. The best case for you. Well, yes, Your Honor. But in that case, as we know, it was an emotionally disturbed person that the police had essentially used a tactic of fishbowling the individual. They were contained in their apartment. And the police officers were outside of the apartment's door, and they testified that they could hear sirens on the way. And yet they reentered the apartment, the emotionally disturbed person charged at them with a knife, and they deployed deadly force on them. Now, here, Rose was an ambulatory active shooter. He had already discharged the sawed-off shotgun in a public park. So there was a much more eminent threat that Officer Ellis was being dispatched to. Second of all, there's nothing in the records, such as Your Honor observed, that Officer Ellis knew the directions of the shots. Moreover, Officer Ellis, although he was generally aware that backup was on the way, he didn't know how long it was going to precisely take, and more importantly, he didn't know the direction backup would be arriving from, which is very, very important tactically, even what plaintiff's experts say when you're dealing with these situations, in the sense that it's a triangular approach. So, and if we look at the facts in the record, upon arriving at the park, Officer Ellis could not see the active shooter. I believe he did a very quick investigation, spoke to a couple witnesses. I believe it's the testimony of Mrs. Madox. She says that she can see just the ankles of the active shooter sitting under the tubular slide of the sliding board in the park. So at that point, he's got to make a positive identification that this is indeed the active shooter that had fired the shots. So he does enter the park. Now, plaintiff's expert gives lots of testimony that he should have went for cover and concealment and waited to respond. But he had to enter the park in order to make the identification of the active shooter. And it's only then does the plaintiff rise with the sawed-off shotgun. And at that point, if you look at S.A. 289, you can see there's no cover or concealment ready for this police officer to take. So if we look with his tactics, and one of the things they're tactically trained on is the moving and shooting approach. And the premise of that is that a moving target is harder to hit than a stationary one, which is exactly what Officer Ellis did. He did move towards the subject and fired two rounds, which I believe are not in dispute. One hits the sliding board post and bounces off and ricochets, doesn't strike anyone. And the other one does get discharged into the left hand of the active shooter. Now, moving to the second portion of your question, which is, was it reasonable for Officer Ellis to have the mistaken perception about the muzzle end of the shotgun? First of all, I'll say there's second circuit case law. It's the Fontaine case, which is a second circuit 2012 case, which says that you cannot make a question of fact over the direction of a muzzle of a firearm at the split second that the officer uses deadly force. And the reason for this makes it's relatively simple. It's even plaintiff's own firearm expert testified that if the shotgun was pointing at himself, he could have spun it around in under a second and killed the police officer. Again, it takes about 21 hundredths of a second to fire a firearm and kill someone. Moreover, under the Supreme Court case law, we start with Graham and we go specifically to saucer versus cats. And it talks about if a police officer mistakenly, reasonably perceives facts wrong, then the qualified immunity analysis is done through those mistaken perceptions of fact. And if we look at the record, three other witnesses made the same mistake Officer Ellis did, which is that they confused the end of the shotgun wrong. Again, look at this sawed off shotgun. It's an SA7. It's clearly the muzzle's been cut off and the buttstock's been removed. So it literally looks like a stick. So I will say two of those other, two of the three witnesses that mistakenly confused the muzzle from what remained of the pistol grip of the firearm had firearm experience. One was a combat Vietnam veteran and the other one was an active or had been a competitive shooter and had extensive firearm training and experience and hunting and things of that nature. Both of those two individuals also confused what was the muzzle end and the pistol grip of the shotgun. So for those reasons, I would submit that Officer Ellis is entitled to qualified immunity for the actions that he took on Addison Miller Park on July 14th, 2013. If I have no other questions from the panel. Seeing none, I would request that the district court's judgment be affirmed in all respects. Thank you. Nothing further. Thank you. Again, Your Honor, there is no proof in the record whatsoever that at this time he was IDing an active shooter or that he was engaged in a misperception. His testimony is clear and explicit that he was shot at. And that is just a blatant lie. With that, thank you, Your Honor. Thank you. Thank you both for your arguments. The court will reserve decision.